COLANGELO v TAU KAPPA EPSILON FRATERNITY

Docket No. 146840. Submitted January 18, 1994, at Grand Rapids.
Decided May 3, 1994, at 9:05 A.M.

Woodrow Colangelo, for himself and as personal representative of
the estate of Woody Colangelo, and Sharon K. Colangelo
brought a wrongful death action in the Mecosta Circuit Court
against Tau Kappa Epsilon Fraternity and others, alleging in
part that the decedent died as a result of Tau Kappa Epsilon's
negligent supervision of one of its local chapters. The decedent
sustained fatal injuries when he was struck by two automobiles
whose drivers, as well as the decedent, had become intoxicated
at a party hosted by the local chapter. The court, Lawrence C.
Root, J., summarily dismissed the negligence claim, ruling that
Tau Kappa Epsilon did not owe an actionable duty of supervi-
sion. In an appeal by a defendant that no longer is a party to
the action, the plaintiffs cross appealed the grant of summary
disposition for Tau Kappa Epsilon.

The Court of Appeals *held:*

Under the circumstances of this case and in light of policy
considerations that determine whether a defendant owes a duty
to a plaintiff, Tau Kappa Epsilon did not owe the decedent or
other third parties a duty to supervise the local chapter's
actions to ensure their protection from the harm that befell the
decedent.

Affirmed.

NEGLIGENCE — DUTY.

In determining whether a duty exists, courts consider the foresee-
ability of the harm, the degree of the certainty of injury, the

REFERENCES

Am Jur 2d, Associations and Clubs § 31; Fraternal Orders and
Benefit Societies § 179.

Liability of social club for injury to or death of nonmember. 15
ALR3d 1013.

Tort liability of college or university for injury suffered by student
as a result of own or fellow student's intoxication. 62 ALR4th 81.

Tort liability of college, university, fraternity, or sorority for injury
or death of member or prospective member by hazing or initia-
tion activity. 68 ALR4th 228.

closeness of the connection between the conduct and the injury, the moral blame attached to the conduct, the policy of preventing future harm, and the burdens and the consequences of imposing a duty and the resulting liability for breach.

*William A. Wertheimer, Jr.,* for the plaintiffs.

*Linsey, Strain & Worsfold, P.C. (by Dale M. Strain),* for Tau Kappa Epsilon Fraternity.

Before: MacKENZIE, P.J., and HOLBROOK, JR., and D. A. BURRESS,* JJ.

PER CURIAM. In this wrongful death action, the plaintiffs appeal as of right a June 27, 1989, Mecosta Circuit Court order granting summary disposition in favor of defendant Tau Kappa Epsilon Fraternity (national fraternity). We affirm.

This action arises out of an incident that occurred at approximately two o'clock in the morning on December 13, 1986, when Keith Colangelo was hit by a car driven by Shannon Hart. Colangelo was walking to his dormitory room at Ferris State College in Big Rapids. Immediately after this accident, a car driven by Caitlin Bryant collided with Hart's vehicle and then with Colangelo, who was then lying at the side of the road. Colangelo died as a result of the accidents. Hart, Bryant, and Colangelo had just left a party hosted by the Theta Psi Chapter (the local chapter) of the national fraternity. Hart, Bryant, and Colangelo were legally intoxicated at the time of the collisions. Defendant Theta Psi Chapter Housing Corporation of Tau Kappa Epsilon (the housing corporation) owned the lodge hall where the party was held. The housing corporation leased the lodge to the local chapter. The local chapter was the Ferris State College affiliate of the national fraternity.

* Circuit judge, sitting on the Court of Appeals by assignment.

On July 30, 1987, the plaintiffs filed suit against several defendants, including the drivers and owners of the vehicles involved in the two collisions, the national fraternity, the housing corporation, the local chapter, and several individuals who were either members, officers, or directors of the organizations named as defendants. Plaintiffs settled with four defendants, voluntarily dismissed several others, and had a default judgment entered against the local chapter. The trial court granted summary disposition in favor of several defendants. The trial court also granted the national fraternity's motion for summary disposition of the plaintiffs' claims based on dramshop and social host liability and negligence. Plaintiffs proceeded to trial against the housing corporation. A jury found in favor of the plaintiffs and awarded them $750,000 in damages, less twenty-five percent for comparative negligence.

The trial court denied the housing corporation's motion for judgment notwithstanding the verdict or for a new trial. Defendant housing corporation appealed the final judgment. Plaintiffs cross appealed the trial court's failure to award interest on its award of attorney fees against the housing corporation. Plaintiffs also cross appealed the trial court's orders granting summary disposition of their claim of negligent supervision by the housing corporation, granting summary disposition in favor of several of the individual defendants, and the order granting summary disposition in favor of the national fraternity. On June 30, 1992, this Court entered an order dismissing the plaintiffs' cross appeal against the individuals named as defendants. On September 2, 1993, this Court entered another order dismissing the housing corporation's appeal. Consequently, the only remaining issue before this Court is whether the trial court erred

in granting the national fraternity summary disposition.

Plaintiffs do not dispute the trial court's decision to grant the national fraternity summary disposition of their dramshop and social host liability claims. Plaintiffs only contend that the trial court erred in granting summary disposition of their claim that the national fraternity was negligent in supervising the local chapter. The trial court determined that the national fraternity's articles of incorporation did not impose a duty of supervision for the protection of third parties, and that the articles only established the rights and powers of the national fraternity to protect its name, rituals, principles, and traditions. The trial court concluded that the national fraternity had no duty to supervise the local chapter.

The issue whether a defendant owes an actionable legal duty to a plaintiff is a question of law that the court must decide after assessing the competing policy considerations for and against recognizing the asserted duty. *Friedman v Dozorc,* 412 Mich 1, 22; 312 NW2d 585 (1981); *Moning v Alfono,* 400 Mich 425, 436-438; 254 NW2d 759 (1977). A question of law is subject to review de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991).

In the present case, the plaintiffs may maintain a negligence action against the national fraternity only if the national fraternity had a legal duty to conform to a particular standard of conduct in order to protect the plaintiffs' decedent from unreasonable risks of harm.[1] *Riddle v McLouth Steel*

---

[1] The case law cited by the plaintiffs for the proposition that the national fraternity had the duty to supervise the local chapter's daily activities are distinguishable from the present case. Unlike the present case, the national fraternity in *Ballou v Sigma Nu General*

*Products Corp,* 440 Mich 85, 96; 485 NW2d 676 (1992). In *Buczkowski v McKay,* 441 Mich 96, 100-.101; 490 NW2d 330 (1992), our Supreme Court stated:

> Duty is actually a " 'question of whether the defendant is under any obligation for the benefit of the particular plaintiff' and concerns 'the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other.' " " 'Duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." [Citations omitted.]

In determining whether a duty exists, courts may contemplate the following policy considerations: foreseeability of the harm, degree of certainty of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach. *Id.,* p 101, n 4, citing Prosser & Keeton, Torts (5th ed), § 53, p 359, n 24.

The ability of the national fraternity to foresee that a person of insufficient age to drink legally would consume alcoholic beverages at a party hosted by the local chapter, become intoxicated, and then drive away from the party and injure the plaintiffs' decedent is questionable. The national fraternity is an Illinois corporation that has ap-

*Fraternity,* 291 SC 140; 352 SE2d 488 (1986), conceded that an agency relationship existed between it and its local chapter. Thus, Sigma Nu was bound by the local chapter's acts in conducting "hell night" because they were performed within the scope of its authority. The decision in *Jefferis v Commonwealth,* 371 Pa Super 12; 537 A2d 355 (1988), is also inapplicable because that decision involved social host liability. Here, the plaintiffs conceded that summary disposition was properly granted with respect to its claim of social host liability.

proximately 315 independent chapters throughout the United States and Canada, with over 14,000 undergraduate members. Its articles of incorporation provide for discipline in the event that its principles, rituals, and traditions are not observed by the local chapters. Local chapters are responsible for the daily supervision of student members. We find it unreasonable to expect a central office to be able to predict that such a sequence of events will occur.

Regarding the second policy consideration, the degree of certainty of harm is unquestionably high when underage individuals are provided with alcohol, become intoxicated, and then drive. However, the failure of a national organization's central staff to supervise parties will not necessarily have such tragic results. We find that harm would not certainly occur to persons situated similarly to the plaintiffs' decedent if the national fraternity were to breach the proposed duty to supervise the local chapter.

Analysis of the closeness of connection between the conduct and the injury in this case weighs in favor of the national fraternity. The chain of events leading from the national fraternity's failure to supervise the local chapter to the decedent's injury includes the national fraternity's failing to stop the local chapter from providing alcohol to minors, the local chapter allowing guests to leave while intoxicated, the defendant drivers driving while intoxicated, and also the circumstances of the fatal impact itself, including the road conditions and visibility. We find that the decedent's death was not closely connected to any breach of the national fraternity's alleged duty to supervise the local chapter.

Similarly, our consideration of the moral blame attached to the conduct also leads us to conclude

that the national fraternity did not have an actionable duty. The local chapter and its individual members, the housing corporation, and the defendant drivers were active participants in the tragedy. On the other hand, the national fraternity, in failing to supervise the events that led to the accidents, is the least blameworthy party.

The policy of preventing future harm would be served by determining that the national fraternity owed a duty to supervise its local chapters' daily activities for the protection of third parties. It would put the central offices of national social organizations on notice that the public will not tolerate such behavior, causing the organizations to take a more active role in policing local chapters. Although the imposition of the duty to supervise may prevent future harm, this factor alone is insufficient to impose such a duty in light of the other policy considerations.

Examination of the burdens and consequences of imposing a duty and the resulting liability for breach underscores the soundness of the trial court's decision not to impose a duty upon the national fraternity to supervise the daily activities of its local chapters. The effect of imposing such a duty would force the central staff of a national organization to maintain continuous contact with every local branch in order to determine what proposed daily activities might possibly harm third parties. An organization like the national fraternity, which has over three hundred local chapters, would require a large staff and complex organizational structure to accomplish this task, thereby greatly increasing the cost of operation. Notably, the purpose of organizations like the national fraternity would fundamentally change from an instructor of the principles, rituals, and traditions of the fraternity to a central planning and policing

authority. The resulting liability for breach of such a duty might then be evenly assessed to all members of the organization by the purchase of insurance, with those local chapters most at risk being assessed higher premiums. We find this situation less equitable in comparison to the current system in which the local chapters and their local governing boards (like the housing corporation) take responsibility for their own actions.

After weighing the relationship of the parties, the nature of the risk, and the public interest in the proposed solution, we determine that the national fraternity owed no duty to supervise the local chapter's actions for the protection of third parties. *Samson v Saginaw Professional Bldg, Inc,* 393 Mich 393, 406; 224 NW2d 843 (1975). Thus, the trial court did not err in granting the national fraternity summary disposition.

Affirmed.