HAUPT v KERR MANUFACTURING COMPANY

STEWART v KERR MANUFACTURING COMPANY

NAGEL v KERR MANUFACTURING COMPANY

Docket Nos. 166484, 166485, 166648, 166651. Submitted January 11, 1995, at Detroit. Decided April 21, 1995, at 10:20 A.M.

Michael J. Haupt, as personal representative of the estate of Theresa M. Haupt; Scott Stewart, as personal representative of the estate of Sandra Stewart; and Richard Nagel, as personal representative of the estate of Donald Nagel, each brought an action in the Wayne Circuit Court against Kerr Manufacturing Company and others, alleging that the decedents died from exposure to mercury vapors as a result of Kerr's negligence. The decedents were exposed to the vapors when Paul Stewart, a Kerr employee, wrongfully took metal alloy from Kerr and smelted the alloy in the basement of Donald Nagel's home. Plaintiff Richard Nagel additionally alleged that Kerr is liable under the Michigan Environmental Response Act, MCL 299.601 *et seq.*; MSA 13.32(1) *et seq.*, for response costs associated with the release of mercury. The court, Sharon Tevis Finch, J., granted summary disposition for Kerr with respect to all claims brought against it. The plaintiffs appealed, and their appeals were consolidated.

The Court of Appeals *held:*

1. Kerr owed no actionable duty to any of the plaintiffs' decedents because it was not reasonably foreseeable that one of its employees would engage in intentional criminal conduct by stealing and subsequently misusing its property.

2. Pursuant to MCL 299.612; MSA 13.32(12), the owner or operator of a facility is liable for response-activity costs incurred as a result of a release from the facility. Kerr is not liable for response-activity costs associated with the release of mercury at Donald Nagel's home because the home was not a Kerr facility.

Affirmed.

REFERENCES

Am Jur 2d, Products Liability § 934.

See ALR Index under Products Liability.

NEGLIGENCE — BUSINESSES OR MANUFACTURERS — PRODUCT THEFT OR
  MISUSE BY EMPLOYEES.
  A business or manufacturer is not liable for negligence to its
    employee or to third parties for injuries caused to them by the
    employee's theft or misuse of its product.

*Carl T. Colwell,* for Michael J. Haupt.

*Lopatin, Miller, Freedman, Bluestone & Herskovic* (by *Richard E. Shaw*), for Scott Stewart.

*Gittleman, Paskel, Tashman & Blumberg P.C.* (by *Gary R. Blumberg*), for Richard Nagel.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana* and *Jerome A. Galante*), for Kerr Manufacturing Company.

Before: CONNOR, P.J., and WAHLS and SAAD, JJ.

SAAD, J. In this tragic case, Paul Stewart, Sandra Stewart, Donald Nagel, and Theresa Haupt died from exposure to mercury vapors because Paul Stewart wrongfully and unwisely attempted to smelt metal alloy in the basement of Donald Nagel's home. The evidence strongly suggests that Paul Stewart wrongfully took the metal alloy from his employer, Kerr Manufacturing Company. In their complaints, plaintiffs seek to hold Kerr liable in negligence for the deaths sustained by plaintiffs' decedents. The trial court granted Kerr's motion for summary disposition of the negligence claim because it reasoned that Kerr owed no duty to plaintiffs' decedents for deaths caused by the theft and subsequent misuse of its property by its employee. The trial court also dismissed a separate claim brought by Richard Nagel for recovery of response-activity costs under the Michigan Environmental Response Act, MCL 299.601 *et seq.*; MSA 13.32(1) *et seq.* Plaintiffs appeal as of right in

these consolidated actions. For the reasons stated below, we affirm the decision of the trial court.

## I

There is no dispute that plaintiffs' decedents died of exposure to mercury vapors. Paul Stewart, without proper precaution or procedure, tried to smelt metal alloy in a furnace in the basement of the home of Donald Nagel, Paul Stewart's father-in-law. Investigators found that the application of heat caused the mercury in the alloy to vaporize. The bucket of metal alloy used in the basement was the same type of alloy used at Kerr. Kerr's operations included, among other things, the manufacture of dental fillings, which created "reclaim alloy" as a by-product. Kerr stored the reclaim alloy in different colored buckets to indicate the various levels of mercury concentration. The reclaim alloy was collected and sent to a vendor for recovery of its silver content, for which defendant Kerr would receive credit.

In their suits, plaintiffs asserted that Kerr should be liable for the deaths because it was negligent in failing to properly label the containers of reclaim alloy and keep those containers under tight security in order to prevent their removal. Kerr responded that it should not be held responsible because Paul Stewart stole and misused the reclaim alloy. No evidence was presented to show that Paul Stewart had permission to possess the reclaim alloy. As noted above, the trial court granted Kerr's motion for summary disposition with respect to all claims. We affirm.

## II

The central issue is whether Kerr owed a duty to plaintiffs' decedents. We conclude that because

it was not reasonably foreseeable that one of its employees would engage in intentional criminal conduct by stealing and subsequently misusing its property, Kerr owed no duty to any of plaintiffs' decedents.

Whether a defendant owes a plaintiff an actionable duty is a legal question for the court to decide "after assessing the competing policy considerations for and against recognizing the asserted duty." *Colangelo v Tau Kappa Epsilon Fraternity,* 205 Mich App 129, 132; 517 NW2d 289 (1994). Our Supreme Court said so in *Buczkowski v McKay,* 441 Mich 96, 100-101; 490 NW2d 330 (1992):

> Duty is actually a " 'question of whether the defendant is under any obligation for the benefit of the particular plaintiff' and concerns 'the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other.' " " 'Duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." [Citations omitted.]

In *Buczkowski, supra* at 101, n 4, the Court articulated "several variables that . . . go to the heart of a court's determination of duty." This Court in *Colangelo, supra* at 133, incorporated those same variables into its analysis of duty as follows:

> In determining whether a duty exists, courts may contemplate the following policy considerations: foreseeability of the harm, degree of certainty of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach. [Citations omitted.]

Consistent with the approach taken by this Court in *Colangelo* for determining the existence of a legal duty, we conclude that Kerr owed no legal duty to plaintiffs' decedents.

First, regarding foreseeability, we find that injury to plaintiffs' decedents was not clearly foreseeable by Kerr. It was not foreseeable that one of Kerr's employees would steal the reclaim alloy, take it to a residence, attempt to smelt the alloy, and thus release the toxic mercury vapors. Importantly, all of the evidence indicates that Paul Stewart obtained the reclaim alloy illegally. While such criminal misconduct by employees is unfortunately an all too frequent occurrence, it should not be considered to be reasonably foreseeable so as to impose a duty upon employers.

Second, regarding the "degree of certainty" of injury, we conclude that the injury to plaintiffs' decedents was remote. The duty proposed by plaintiffs is that Kerr should have imposed stricter security measures at its facilities. However, if Kerr were to breach the proposed duty of stricter security suggested by plaintiffs we cannot say, with any degree of certainty, that other persons situated similarly to plaintiffs' decedents would not have been injured.

Third, examination of the "closeness of the connection between the conduct and the injury" reveals that the injury to plaintiffs' decedents was far removed from Kerr's operations. As indicated in the factual summary, *supra,* there was a long and tortuous chain of intervening and superseding events that occurred before plaintiffs' decedents were injured.

Fourth, we would not attach any "moral blame" to Kerr's conduct because there was no evidence that Kerr violated safety regulations or ignored the potential danger of its products. The evidence

shows that Kerr identified and separated the reclaim alloy that was contaminated with mercury. Kerr neither misidentified nor failed to separate the reclaim alloy that caused the deaths of plaintiffs' decedents. Further, Paul Stewart had no permission to take the reclaim alloy. We refuse to shift the moral blame and its consequences from Paul Stewart to his employer.[1]

Fifth, the policy of "preventing future harm" could conceivably be advanced by imposing a legal duty upon Kerr. However, any such benefit would be minimal, considering the unpredictability of criminal behavior, and would be insufficient, in itself, to impose a duty upon Kerr after weighing the other competing policy considerations.

Sixth, considering the "burdens and consequences of imposing a duty and the resulting liability for breach" thereof, we find that businesses and employers of this state, such as Kerr, should not be burdened with the potential for liability in cases such as this. To shift responsibility for the misconduct from the wrongdoer to another party simply because the business may be in a better position to compensate the victims would be unsound public policy. To impose a duty upon the businesses of this state to foresee and protect against the criminal conduct of its employees who steal and misuse their products would be unfair to small and large businesses alike, and we refuse to do so.

Therefore, consistent with *Colangelo* and *Buczkowski, supra,* we hold that a business or manufacturer is not liable for negligence for injuries caused to a thief, or others, by the theft and misuse of its product by one of its employees. The

---

[1] In a similar manner, our Supreme Court has refused to impose liability upon business owners for the criminal activities of third parties. See *Scott v Harper Recreation, Inc,* 444 Mich 441, 451-453; 506 NW2d 857 (1993).

trial court properly granted summary disposition of plaintiffs' negligence claims. MCR 2.116(C)(10).[2]

### III

Next, plaintiff Nagel argues that Kerr should be held liable under Michigan's Environmental Response Act, MCL 299.601 *et seq.*; MSA 13.32(1) *et seq.*, for the response costs associated with the release of mercury from the Nagel residence. However, a cursory reading of the plain language of the statute makes it clear that the Legislature did not intend the act to apply to this type of situation. *Witherspoon v Guilford*, 203 Mich App 240, 246-247; 511 NW2d 720 (1994). The act provides that the owner or operator of a "facility" shall be liable for response-activity costs incurred as a result of a release "from a facility." MCL 299.612; MSA 13.32(12). Here, the mercury was released from the Nagel residence; clearly, the Nagel residence was not one of Kerr's facilities. There can be no doubt that the Legislature did not intend the act to apply in such a case.

For the foregoing reasons, we conclude that the trial court properly granted summary disposition for Kerr with respect to plaintiffs' negligence claims and claims under the Michigan Environmental Response Act.

Affirmed.

---

[2] Because this case involves mixed questions of law and fact, summary disposition under MCR 2.116(C)(10) is appropriate. The trial court properly determined that certain material facts were not disputed before concluding that Kerr owed no legal duty to plaintiffs' decedents.