HALBROOK v HONDA MOTOR COMPANY, LTD

LODER v HONDA MOTOR COMPANY, LTD

Docket Nos. 181561, 181562. Submitted November 12, 1996, at Detroit. Decided July 11, 1997, at 9:00 A.M. Leave to appeal sought.

In an action in the Oakland Circuit Court by Karen Halbrook, as personal representative of the estate of James E. Bondie, and in another action in the same court by Wayne Loder, as personal representative of the estates of Stephen Loder and Stephanie Loder, and by Patricia Loder, the plaintiffs alleged that the decedents died and Patricia Loder was injured in an accident involving a car driven by Patricia Loder and a motorcycle ridden by Bondie as a result of the negligent design, manufacture, marketing, and distribution by defendants Honda Motor Company, Ltd., Anderson Sales & Service, and others of a motorcycle that could exceed speed limits and accelerate quickly. The court, Robert C. Anderson, J., consolidated the cases and granted summary disposition for the defendants, ruling that the defendants owed no actionable duty to the Loders and did not breach duties owed to Bondie. The plaintiffs appealed, and their appeals were consolidated.

The Court of Appeals *held*:

1. Bystanders adversely affected by a manufacturer's product may or may not be owed a duty by the manufacturer depending on the foreseeability of the harm, the degree of certainty of injury, the closeness of connection between the conduct and the injury, the moral blame attached to the conduct, the public policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach. In this case, it is foreseeable to manufacturers of motor vehicles that motorists speed and that excessive speed may cause accidents. However, it is not certain that a motorcycle designed to travel in excess of speed limits and to accelerate quickly will cause injury to others, because the risk of harm is dependent on the way the rider handles the motorcycle. The accident was not closely connected to the fact that the motorcycle could exceed speed limits and accelerate quickly, but was more closely connected to Patricia Loder's failure to yield the right of way and to Bondie's reckless riding. Moral blame for the accident lies with Patricia Loder and Bondie, not with the defend-

ants. The public policy of preventing future harm by imposing a duty on motorcycle manufacturers to design and market vehicles with limited speed and acceleration capabilities should be determined by the Legislature, not the courts. Finally, a duty and the resulting liability for a breach thereof should not be imposed on motor vehicle manufacturers for personal injury resulting from the misuse of their products. The trial court correctly determined that the defendants owed no actionable duty to the Loders.

2. As a matter of public policy, a motor vehicle manufacturer's duty of reasonable care to a user of its product does not extend to reducing the speed and acceleration capabilities of the vehicle. The defendants' marketing and advertising of the motorcycle, which emphasized speed and acceleration, did not proximately cause the accident. The trial court correctly granted summary disposition for the defendants with respect to Halbrook's claims as personal representative of Bondie's estate.

Affirmed.

1. PRODUCTS LIABILITY — THIRD PARTIES.

Considered in determining whether a manufacturer owes a duty to bystanders adversely affected by its product are the foreseeability of the harm, the degree of certainty of injury, the closeness of connection between the conduct and the injury, the moral blame attached to the conduct, the public policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach.

2. PRODUCTS LIABILITY — MOTOR VEHICLES.

Motor vehicle designers, manufacturers, and distributors owe a duty to users or occupants of their motor vehicles to eliminate any unreasonable risk of foreseeable injury, but they incur no liability for the misuse of vehicles that can exceed speed limits and accelerate quickly.

*Nemeir, Tolari, Landry, Mazzeo & Johnson, P.C.* (by *Douglas S. Loomer*), for Karen Halbrook.

*David A. Yurenka, Klein, Wegis* (by *Denise A. Martin*), and *Bendure & Thomas* (by *Mark R. Bendure*), for Wayne and Patricia Loder.

*Bowman and Brooke* (by *Lawrence C. Mann* and *Ronald C. Wernette, Jr.*), for Honda Motor Company, Ltd., and others.

*Nill, Rockwell, Shannon & Keene, P.C.* (by *Dan C. Keene*), for Anderson Sales & Service.

Before: MARILYN KELLY, P.J., and JANSEN and M. Warshawsky*, JJ.

MARILYN KELLY, P.J. In this wrongful death action, plaintiffs appeal as of right from a grant of summary disposition to defendants pursuant to MCR 2.116(C)(8) and (C)(10). Plaintiffs argue that there were factual issues to be resolved by the jury. We affirm.

I

On March 21, 1990, plaintiff Patricia Loder was driving her automobile. Along with her as passengers were her two children, Stephanie and Stephen. While heading eastbound on Sleeth Road in Commerce Township, Loder stopped in preparation to turn left onto Half Penny Court. A motorcycle traveling westbound on Sleeth passed her at a high rate of speed. Loder then began to turn left. As she did, her automobile was struck in the right hand side by another westbound motorcycle driven by James Bondie. Upon impact, Stephen, Stephanie and Bondie were killed. Loder sustained serious injuries.

Patricia Loder and Wayne Loder, as personal representative of his two children, and Karen Halbrook, as personal representative of Bondie's estate, sued each other for negligence. Thereafter, the Loders sued defendants, claiming negligence in the design, manufacture, marketing and distribution of Bondie's motorcycle. The Loders claimed that defendants created

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and sold a vehicle that could travel and accelerate too fast. Neither the inexperienced rider nor other drivers on the road could appreciate its capabilities. Therefore, they claimed, the motorcycle was dangerous and unsuitable for public highways. The Loders also asserted that defendants deliberately marketed the motorcycle to young male riders with special emphasis on speed.

Halbrook filed a similar complaint. The cases were consolidated by the lower court which granted summary disposition for defendants. It found that defendants were not responsible for Bondie's reckless acts.

II

A

We review a grant of summary disposition de novo. *Plieth v St Raymond Church*, 210 Mich App 568, 571; 534 NW2d 164 (1995). A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of a claim to determine whether the opposing party's pleadings allege a prima facie case. *Wortelboer v Benzie Co*, 212 Mich App 208, 217; 537 NW2d 603 (1995). All well-pleaded facts are considered in favor of the non-moving party. The motion should be granted only where the claim, based on the pleadings alone, is so clearly unenforceable as a matter of law that no factual development could justify a right to recover. *Paul v Bogle*, 193 Mich App 479, 495-496; 484 NW2d 728 (1992).

It appears that the trial court's grant of defendants' motion for summary disposition was made after a finding that defendants did not owe a duty to plaintiffs. Duty is a legally recognized obligation to conform to a particular standard of conduct toward

another. *Ross v Glaser*, 220 Mich App 183; 559 NW2d 331 (1996); *Chivas v Koehler*, 182 Mich App 467, 475; 453 NW2d 264 (1990). If the court determines as a matter of law that a defendant owed no duty to a plaintiff, summary disposition is properly granted under MCR 2.116(C)(8). *Ross, supra; Dykema v Gus Macker Enterprises, Inc*, 196 Mich App 6, 9; 492 NW2d 472 (1992).

In general, our courts recognize that a manufacturer has a duty to bystanders adversely affected by its products. *Moning v Alfono*, 400 Mich 425, 433; 254 NW2d 759 (1977), modified 402 Mich 958 (1978). However, the duty to bystanders is not absolute. Product manufacturers are not insurers. Thus, they are not absolutely liable for any and all injuries sustained from the use of their products. See *Glittenberg v Doughboy Recreational Industries (On Rehearing)*, 441 Mich 379, 388, n 8; 491 NW2d 208 (1992). In *Buczkowski v McKay*, 441 Mich 96, 100-101; 490 NW2d 330 (1992), our Supreme Court stated:

> Duty is actually a " 'question of whether the defendant is under any obligation for the benefit of the particular plaintiff' and concerns 'the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other.' " " 'Duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." [Citations omitted.]

The following policy considerations are often relevant: (1) the foreseeability of the harm, (2) the degree of certainty of injury, (3) the closeness of connection between the conduct and injury, (4) the moral blame attached to the conduct, (5) the public policy of preventing future harm, and (6) the burdens and con-

sequences of imposing a duty and the resulting liability for breach. *Colangelo v Tau Kappa Epsilon Fraternity*, 205 Mich App 129, 132; 517 NW2d 289 (1994). Whether defendants had a duty to protect the Loders depends on the relationship between the parties, the nature and foreseeability of the risk and any other considerations that may be relevant on the issue. *Buczkowski, supra* at 103.

B

We find that it is foreseeable to manufacturers of motor vehicles that motorists speed and that excessive speed may cause accidents. This is especially true, as in this case, where it is alleged that defendants advertised the speed and acceleration capabilities of their motorcycle. However, the determination of whether a duty exists does not turn solely on foreseeability.

The second factor, degree of certainty of injury, weighs against the Loders. It is not certain that a motorcycle designed to travel in excess of the speed limit and accelerate quickly will cause injury to others. The risk of harm is dependent, in part, on the way the driver handles the vehicle. Even if vehicles were designed to travel no faster than the maximum highway speed limit, there is no certainty that injuries to others could be averted. For instance, in this case, we will assume that Bondie's motorcycle was traveling approximately 80 miles per hour in a 45 mile per hour zone. If it had been capable of traveling no faster than 70 miles per hour, there is no certainty that the injuries would have been avoided. Moreover an automobile traveling at 70 miles per hour in a 25 mile per hour zone could be just as deadly.

The third factor, closeness of connection between the conduct and the injury to the Loder plaintiffs, weighs in favor of defendants. The deaths were not closely connected to the fact that the vehicle could be driven in excess of the speed limit and could accelerate quickly. Rather, the accident was more closely connected to the failure of Patricia Loder to yield the right of way and Bondie's reckless driving.

The fourth factor, moral blame attached to the conduct, requires this Court to look at the participants to the tragedy and determine which were the most blameworthy. *Colangelo, supra* at 134. We find that defendants are the least blameworthy. They did not cause Bondie to disobey the law nor did they cause Patricia Loder to ignore the oncoming motorcycle. To shift the moral blame to the motor vehicle manufacturer merely because the accident involved automotive speed is a step we are not willing to take. See *Haupt v Kerr Mfg Co*, 210 Mich App 126; 532 NW2d 859 (1995).

The policy of preventing future harm might be advanced by imposing a legal duty on motor vehicle manufacturers to design and market vehicles with limited speed and acceleration capabilities. However, the danger of a moving vehicle is heavily dependent on its driver. Moreover, in the highly regulated area of motor vehicles, it is preferable that the Legislature, not the courts, determine if speed limitations should be set for motor vehicles. See *King v R G Industries, Inc*, 182 Mich App 343, 345; 451 NW2d 874 (1990).

Finally, considering the burdens and consequences of imposing a duty and the resulting liability for breach, we find that automobile manufacturers should not be potentially liable to innocent persons in

this type of case. If we impose a burden on motor vehicle manufacturers to protect persons who could be injured by the misuse of their products, the result would be a great increase in litigation. In some instances a product manufacturer is in a better position to assume the costs of litigation and redistribute them to the general public. However, in this case, we find it to be too great a burden. Automobile manufacturers are not insurers. We find they are not bound to guard against the careless misuse of their products by negligent drivers, as in the case before us.

Therefore, we hold that the trial court properly granted summary disposition to defendants with respect to the Loders' claims.

C

We turn now to James Bondie. Our courts have generally held that motor vehicle designers, manufacturers and distributors owe a duty to users or occupants to eliminate any unreasonable risk of foreseeable injury. *Haberkorn v Chrysler Corp*, 210 Mich App 354, 364; 533 NW2d 373 (1995). The next inquiry is whether defendants were unreasonable in manufacturing, designing, marketing and distributing a motor vehicle that could travel in excess of the speed limit and accelerate quickly. It is usually a question for the jury. *Moning, supra* at 438. However, when there are overriding public policy concerns, the question of reasonable care is for the court to decide as a matter of law. *Scott v Harper Recreation, Inc*, 444 Mich 441, 448; 506 NW2d 857 (1993); *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 500-501; 418 NW2d 381 (1988). Such public policy concerns exist in the present case.

We find as a matter of public policy that an automobile manufacturer's duty of reasonable care does not extend to reducing the speed and acceleration capabilities of its vehicles, as plaintiffs ask in this case. While automobile manufacturers can limit defects in their products, as a matter of public policy, we are not willing to hold them liable for the consumers' misuse of their products. We limit our decision to the specific claims brought before us in this case.

D

Plaintiffs also argue that defendants' advertising campaigns were responsible for the accident. They argue that Bondie was an impressionable young man who was concerned with his image. He was enticed into breaking the law by defendants' advertisement which encouraged him to speed.

Plaintiffs rely on *Moning, supra*, to support their argument. There, the Supreme Court stated:

> "One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." [*Moning, supra* at 425, quoting 2 Restatement Torts, 2d, § 390.]

However, the *Moning* Court was concerned with whether marketing slingshots directly to children created an unreasonable risk of harm. The Supreme Court later noted that *Moning* does not support a duty to third parties with regard to marketing, except where children are concerned, as children are an his-

torically protected class. *Buczkowski, supra* at 103, n 8.

Here, there is no question that Bondie was not a child. He was twenty-six years old and licensed to drive a motorcycle. Plaintiffs' attempts to liken Bondie to the children at issue in *Moning* is unpersuasive. There is no duty for an advertiser to change its advertising pitch on the basis that the target adult audience may be swayed by the advertisement. The claims of speed and fast acceleration in the advertisements were mostly puffing. *Overton v Anheuser-Busch Co*, 205 Mich App 259, 261; 517 NW2d 308 (1994).

Moreover, after reviewing the record, we find that plaintiffs failed to provide any evidence that the advertisements were the proximate cause of the accident. Normally, the issue of causation is for the jury. However, if there is no issue of material fact, the trial court may decide the issue itself. *Babula v Robertson*, 212 Mich App 45, 54; 536 NW2d 834 (1995). The trial court correctly dismissed plaintiffs' complaint after finding that no evidence was presented that defendants' advertising caused the accident.

Affirmed.