CORRIGAN, J.
In this case we consider the scope of a manufacturer’s or seller’s duty to warn of product risks under MCL 600.2948(2). We conclude that the statute imposes a duty to warn that extends only to material risks not obvious to a reasonably prudent product user, and to material risks that are not, or should not be, a matter of common knowledge to persons in the same or a similar position as the person who suffered the injury in question. Because the material risk associated with ingesting and inhaling Wonder 8 Hair Oil, as occurred here, would have been obvious to a reasonably prudent product user, the failure to warn against the risk is not actionable. The Court of Appeals misunderstood this duty and held that a duty also existed to warn of the kind of injuries that were suffered. The Court of Appeals also incorrectly allowed various warranty claims to proceed on the basis that the warning was inadequate. Because no warning was required, these holdings were in error. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the trial court’s order granting summary disposition to all defendants.
*505 I. UNDERLYING facts and procedural history
In April 1999, plaintiff purchased a spray bottle of African Pride Ginseng Miracle Wonder 8 Oil, Hair and Body Mist-Captivate (Wonder 8 Hair Oil) from defendant Pro Care Beauty Supply, which is currently known as Super 7 Beauty Supply, Inc. Defendant A.P Products, which was subsequently acquired by Revlon Consumer Products Corporation, packaged and labeled Wonder 8 Hair Oil. Wonder 8 Hair Oil was marketed principally to African-Americans as a new type of spray-on body and hair moisturizer containing eight natural oils. Plaintiff decided to try the oil after reading the ingredients on the label,[1] some of which were familiar to her and some of which were not. Although the bottle’s label cautioned the user never to spray the oil near sparks or an open flame, it did not warn that the hair oil should be kept out of reach of children or that it was potentially harmful or fatal if swallowed.[2] Plaintiffs 11-month-old son, Keimer Easley, had been left unattended. Somehow he obtained the bottle of hair oil, which had been left within his reach. He ingested and inhaled the hair oil.[3] *506 The child died about one month later from multisystem organ failure secondary to chemical pneumonitis, secondary to hydrocarbon ingestion. In other words, the mineral oil clogged the child’s lungs, causing inflammatory respiratory failure.
Plaintiff filed this products-liability action, alleging that defendants breached their duty to warn that the product could be harmful if ingested and that it should be kept out of reach of small children. Plaintiff further claimed that defendants breached an implied warranty by failing adequately to label the product as toxic.
Defendants moved for summary disposition. AP Products and Revlon argued that they had no duty to warn because the material risks associated with ingesting Wonder 8 Hair Oil were obvious to a reasonably prudent product user. They further argued that the lack of warning was not the proximate cause of the injury and that the product had been misused in a way that was not reasonably foreseeable. Super 7 Beauty Supply argued that plaintiff failed to establish that it, as a nonmanufacturing seller, had independently breached an express or implied warranty or was independently negligent. It further argued that plaintiff failed to show that the product was not fit for its ordinary uses or for a particular purpose.
The trial court granted defendants’ motions for summary disposition. The Court of Appeals reversed and remanded, concluding that the questions whether the Wonder 8 Hair Oil required a warning label, whether *507 defendants breached an implied warranty, and whether plaintiff established proximate cause should have been submitted to a jury.[4]
Defendants sought leave to appeal in this Court. We granted defendants’ applications for leave to appeal.[5]
II. STANDARD OF REVIEW
This case requires us to determine whether the Court of Appeals erred in reversing the trial court’s grant of summary disposition in favor of defendants under MCR 2.116(C)(10). We review this issue de novo. Rose v Nat’l Auction Group, 466 Mich 453, 461; 646 NW2d 455 (2002), citing Maiden v Rozwood, 461 Mich 109, 118; 597 NW2d 817 (1999). “In reviewing such a decision, we consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion.” Rose, supra at 461, citing Quinto v Cross & Peters Co, 451 Mich 358, 362; 547 NW2d 314 (1996). “Summary disposition under MCR 2.116(0(10) is appropriately granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.” Rose, supra at 461, citing MCR 2.116(C)(10).
III. ANALYSIS
Before 1995, a manufacturer’s or seller’s duty to warn of material risks in a products-liability action was governed by common-law principles. Tort reform legislation enacted in 1995,[6] however, displaced the common *508 law. MCL 600.2948, in chapter 29 of the Revised Judicature Act, now governs a defendant’s duty to warn of an obvious danger in a products-liability action. It states, in relevant part:
A defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action. [MCL 600.2948(2).][7]
*509 Under the plain language of MCL 600.2948(2), a manufacturer has no duty to warn of a material risk associated with the use of a product if the risk: (1) is obvious, or should be obvious, to a reasonably prudent product user, or (2) is or should be a matter of common knowledge to a person in the same or a similar position as the person upon whose injury or death the claim is based.[8] Accordingly, this statute, by looking to the reasonably prudent product user, or persons in the same or a similar position as the injured person,[9] establishes an objective standard.[10]
In determining what constitutes a material risk, we are mindful that the statutes governing statutory construction direct us to construe “all words and phrases... according to the common and approved usage of the language,” but construe “technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law” according to such peculiar and appropriate meaning. MCL 8.3a; Horace v City of Pontiac, 456 Mich 744, 756; 575 NW2d 762 (1998). Our research reveals that the term “material risk” has no prior “peculiar and appropriate meaning in *510 the law.” It is thus not a term of art. When considering a word or phrase that has not been given prior legal meaning, resort to a lay dictionary such as Webster’s is appropriate. Id. at 756. Random House Webster’s College Dictionary (1997) defines “material,” in relevant part, as “important: to make a material difference; pertinent: a material question.” Random House Webster’s College Dictionary (1997) defines “risk” as “exposure to the chance of injury or loss.” We thus conclude that a “material risk” is an important or significant exposure to the chance of injury or loss.
Finally, regarding the meaning of the statute, we conclude that the Legislature has imposed no duty to warn beyond obvious material risks. The statute does not impose a duty to warn of a specific type of injury that could result from a risk. The Court of Appeals, however, mistakenly held that warnings must cover not only material risks, as described, but must also cover potential injuries that could result.
While the Court of Appeals properly applied an objective standard in determining the suitability of the warning, it stated that it could not conclude that “as a matter of law, the risk of death from the ingestion of Wonder 8 Hair Oil would be obvious to a reasonably prudent product user and be a matter of common knowledge, especially considering the lack of any relevant warning.” 264 Mich App at 401 (first emphasis added). The Court of Appeals thus required that the warning indicate specific injuries a product user could incur. Yet, as we have stated, the statute does not require that a warning address possible injuries that might occur.[11]
*511 Here, tragically, plaintiffs 11-month-old son died after ingesting and inhaling Wonder 8 Hair Oil.[12] Under the law, however, defendants owed no duty to warn of specific injuries or losses, no matter how severe, if it is or should have been obvious to a reasonably prudent product user that ingesting or inhaling Wonder 8 Hair Oil involved a material risk. We conclude that it is *512 obvious to a reasonably prudent product user that a material risk is involved with ingesting and inhaling Wonder 8 Hair Oil.
The product, as plaintiff concedes, was not marketed as safe for human consumption or ingestion. Rather, the label clearly states that the product is intended for use as a hair and body oil. Although subjective awareness is not the standard, we find it noteworthy that plaintiff herself demonstrated an understanding that Wonder 8 Hair Oil posed a material risk if ingested. We believe it would also be obvious to a reasonably prudent user that ingestion and inhalation of the product poses a material risk. The ingredient label’s inclusion of eight natural oils has no bearing on our conclusion. Many, if not all, oils are natural. It should be obvious to a reasonably prudent product user that many oils, although natural, pose a material risk if ingested or inhaled. For instance, the reasonably prudent product user would know that breathing oil would be harmful. A reasonably prudent product user would also know that ingesting such things as crude oil or linseed oil poses a material risk although such oils are natural and pose no immediate danger from contact with hair or skin. In fact, paraffin oil is listed as one of the ingredients in Wonder 8 Hair Oil. It should be obvious to a reasonably prudent product user that ingesting paraffin oil poses a material risk since paraffin is commonly associated with such things as wax.
Additionally, the product label on Wonder 8 Hair Oil does not state that it contains only natural oils. Indeed, it lists numerous other ingredients, many of which would be unfamiliar to the average product user, such as isopropryl myristate, fragrance, and azulene. Given such unfamiliar ingredients, a reasonably prudent product user would be, or should be, loath to ingest it.
*513 Accordingly, we hold that defendants owed no duty to warn plaintiff that her son’s ingestion and inhalation of the Wonder 8 Hair Oil posed a material risk. Moreover, defendants owed no duty to warn of the potential injuries that could arise from ingesting and inhaling the product.
The plaintiff also pleaded breach of implied warranty under MCL 600.2947(6)(a) and breach of implied warranty of merchantability under MCL 440.2314(2) (e) with respect to the nonmanufacturing seller, Super 7 Beauty Supply. Plaintiff claimed that, in the absence of a warning, the oil was not properly labeled. Because no warning was required, however, these claims are without merit. Defendants are therefore entitled to judgment as a matter of law.
IV RESPONSE TO JUSTICE CAVANAGH’S DISSENT
The crux of Justice CAVANAGH’s dissent is that we erroneously conclude that the obviousness of one risk means the obviousness of all risks. This contention, however, is a gross mischaracterization of our holding and can be found nowhere in our opinion. Rather, we hold that a defendant has no duty to warn of a material risk that is or should be obvious to a reasonably prudent product user. We further hold that the material risk associated with the ingestion and inhalation of hair oil is or should be obvious to a reasonably prudent product user. This conclusion is entirely consistent with the plain language of the statute and focuses on the obviousness of the material risk in question. It does not charge Michigan consumers with “knowledge of hidden dangers” as suggested by Justice CAVANAGH. Post at 524.
Justice CAVANAGH also contends that we fail to identify the material risk in question and mislabel the risk as “ingesting or inhaling” the hair oil. Contrary to his *514 contention, we have clearly identified the material risk in this case. To the contrary, Justice CAVANAGH has mislabeled the risk as the “consequence” that results from the misuse of the product.
The material risk in this case is neither the misuse of the product (the inhalation or ingestion) nor the consequence of the misuse (injury or death). Rather the material risk is the important or significant exposure to the chance of loss or injury stemming from certain behavior, in this case, the ingestion and inhalation of hair oil. In simple terms, the material risk is the chance that injury could result from drinking or inhaling hair oil. Because a reasonable person knows or should know that ingesting or inhaling hair oil would expose that person to the chance of injury or loss, a defendant has no duty to warn that ingesting or inhaling hair oil could result in exposure to injury or loss. Furthermore, the statute does not require that a person be aware of the worst injury or loss (death) that could possibly result from the misuse of the product. Rather, under the plain language of the statute, it need only be obvious to a reasonably prudent product user that a chance exists that he or she might suffer an injury or loss if they drink or inhale hair oil.
We respectfully remind our dissenting colleague that the Legislature, not this Court, refused to impose a duty to warn of obvious material risks. Justice CAVANAGH does not deny this, but evidently chooses to ignore it. By what authority can a court under our Constitution do that? Justice CAVANAGH gives none. The Legislature also refused to require that a defendant list every possible injury that could result from the misuse of a product. Again, Justice CAVANAGH does not deny this, but chooses to ignore it. How does a court obtain such authority? Justice Cavanagh fails to provide an answer, probably *515 because no such authority exists. The rule must and should be that a court applies the statute as written. Applying the plain language of the statute to the facts of this case, we conclude that the material risk associated with ingesting and inhaling hair oil is or should be obvious to a reasonably prudent product user. Thus, defendant had no duty to warn of that material risk.
V CONCLUSION
We conclude that the Court of Appeals erroneously reversed the trial court’s grant of summary disposition to defendants A.P Products and Revlon. The material risk of harm associated with ingesting and inhaling Wonder 8 Hair Oil is obvious to a reasonably prudent product user. Defendants thus owed no duty to warn plaintiff of that harm.
Taylor, C.J., and Young and Markman, JJ., concurred with Corrigan, J.

 The ingredients listed on the label are Gin Gro Oil Complex (paraffin oil, tea tree oil, kuki nut oil, evening primrose oil, avocado oil, coconut oil, wheat germ oil), isopropryl myristate, fragrance, Gin Gro herbal complex (rosemary, sage, angelica root, licorice root, Job’s tears, cedar, hyacinth, dove, lemon balm, chamomile), carrot oleo resin, azulene, tocopherol acetate (Vitamin E), retinyl palmitate (Vitamin A), and cholecalciferol (Vitamin D).

 The hair oil was packaged in a clear plastic 7.5 ounce bottle with a nonaerosol pump actuator.

 When plaintiff first observed that her son had possession of the hair oil, he was standing with the bottle of Wonder 8 Oil in his hand and oil in and around his mouth. Evidently, the child put an unknown amount of hair oil into his mouth, some of which eventually wound up in his lungs. When he was admitted to the hospital, he was diagnosed with hydrocarbon ingestion and chemical pneumonitis. It is not clear how Keimer managed to put the oil into his mouth. Plaintiff testified that when she *506 last used the product earlier that day, the cap had been intact. When she later saw the child with the bottle of oil, the plastic top covering the pump actuator and the actuator were missing. The plastic base of the pump actuator had been cracked vertically so that the pump could be peeled off and the oil could be poured out.

 264 Mich App 391; 691 NW2d 38 (2004).

 474 Mich 886 (2005).

 1995 PA 249, effective March 28, 1996.

 At common law, a duty to warn of dangers involving the use of a product was imposed on a manufacturer or seller under negligence principles summarized in 2 Restatement Torts, 2d, § 388. Glittenberg v Doughboy Recreational Industries (On Rehearing), 441 Mich 379, 389-390; 491 NW2d 208 (1992). A manufacturer or seller could be held liable for failure to warn if it (a) had actual or constructive knowledge of the claimed danger, (b) had no reason to believe that those for whose use the product is supplied would realize its dangerous condition, and (c) failed to exercise reasonable care to inform users of the product’s dangerous condition or of the facts that make it likely to be dangerous. Id., citing 2 Restatement Torts, 2d, § 388, p 301.
Michigan also recognized the common-law “obvious danger” rule. Glittenberg, supra at 393. A manufacturer had no duty to warn if it reasonably perceived that the product’s potentially dangerous condition was readily apparent or could have been disclosed by a mere casual inspection. Id. at 390. Michigan, however, narrowed application of the “obvious danger” rule to cases involving “simple tools or products.” Id. at 393, citing Owens v Allis-Chalmers Corp, 414 Mich 413, 425; 326 NW2d 372 (1982). No duty existed to warn of the obvious danger of a simple product because an obvious danger was no danger to a “reasonably” careful person. Glittenberg, supra at 395-396. In other words, as stated by this Court in Glittenberg, “where the very condition that is alleged to cause the injury is wholly revealed by casual observation of a simple product in normal use, a duty to warn serves no fault-based purpose.” Id. at 396, citing Prentis v Yale Mfg Co, 421 Mich 670; 365 NW2d 176 (1984). A product was considered simple if it was a “ ‘thing of universally known characteristics, not a device with parts or mechanism, the only danger being not latent but obvious to any possible user ....’” Glittenberg, supra at 391, quoting Jamieson v Woodward & Lothrop, 101 US App DC 32, 37; 247 F2d 23 (1957).

 The principles set forth in MCL 600.2948(2) incorporate most of the common-law principles regarding the “obvious danger” doctrine. The statute, however, does not incorporate principles regarding “simple tools and products.” Under the statute, a defendant need not show that the product in question was a “simple” product in order for the “obvious danger” doctrine to apply.

 Because it would not be a matter of common knowledge to a person in the same or a similar position as plaintiffs son, an 11-month-old, that a material risk is involved with ingesting Wonder 8 Hair Oil, the only issue in this case is whether it would he obvious to a reasonably prudent product user that a material risk is involved with ingesting Wonder 8 Hair Oil.

 Interestingly, the Legislature’s use of an objective standard is consistent with this Court’s case law predating the statute. See Glittenberg, supra at 391-392.

 In Glittenberg, supra at 400, this Court addressed whether a defendant must warn of specific harms. The plaintiff in Glittenberg argued that the danger of diving in a shallow pool was not open and obvious because *511 the specific harm of paralysis or death is not generally recognized. Id. This Court noted, however, that the “threshold issue is not whether a shallow dive can be successfully executed but, rather, whether people in general are unaware of the fact that there is a risk of serious harm when diving in shallow water.” Id. at 401. This Court concluded:
[W]here the facts of record require the conclusion that the risk of serious harm from the asserted condition is open and obvious, and no disputed question exists regarding the danger of the product, the law does not impose a duty upon a manufacturer to warn of conceivable ramifications of injuries that might occur from the use or foreseeable misuse of the product. [Id. at 402.]
If the Legislature had intended to require a defendant to warn of specific dangers, it would have explicitly mandated that alteration in MCL 600.2948(2).
Justice Cavanagh mistakenly asserts that we rely on common-law principles set forth in Glittenberg, supra, in reaching our conclusion. We, however, rely solely on the plain language of MCL 600.2948(2) in reaching our conclusion. As stated above, MCL 600.2948(2) does not require that a defendant warn of specific dangers, and it is not within this Court’s authority to read such language into the statute.

 Justice Kelly contends that the vast majority of the ingredients listed on the label are seemingly food products. She further contends that none of the ingredients alerts a reasonably prudent product user to the fatal result of ingestion. We reiterate, however, that plaintiffs 11-month-old son died from complications stemming from inhaling Wonder 8 Hair Oil into his lungs. That the child swallowed some of the hair oil was incidental to his death. But because it would be obvious to a reasonably prudent product user that harm could result from allowing a young child to possess a bottle of oil, whether the harm occurs through ingestion or inhalation or some other action, we hold that no duty exists to warn of the injuries that actually result from allowing the child to possess the oil.