*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT ABRAMS,

        Plaintiff-Appellant,

v

MARTIN YONO,

        Defendant-Appellee.

UNPUBLISHED
May 23, 2024

No. 366397
Oakland Circuit Court
LC No. 2021-191292-CH

Before: FEENEY, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

Plaintiff, Scott Abrams, appeals as of right the trial court's entry of a judgment of no cause of action in favor of defendant, Martin Yono. On appeal, Abrams challenges both the trial court's decision following a bench trial, and the trial court's earlier order denying his motion for summary disposition under MCR 2.116(C)(10). We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

In September 2015, Abrams and Yono entered into a four-year residential lease with an option to purchase. Under the terms of the lease, Abrams had the option to purchase the property for $346,600 "at any time during his tenancy." The option could only be exercised if (1) Abrams was not in default and (2) the lease had not been terminated under paragraphs 19 or 20 of the lease agreement. In March 2019, Abrams, through his lawyer, gave Yono written notice that he intended to exercise the option and purchase the property. At that time, Abrams was not in default and the lease had not been terminated under paragraphs 19 or 20 of the lease agreement. Abrams presented evidence showing that he was ready to close.

Ultimately, however, the parties were unable to close because there was a cloud on the title as a result of the United States Attorney's Office recording an affidavit relating to a matter affecting real property. The affidavit was recorded against the property in August 2017; the affidavit states that "the United States of America is aware of certain fact(s), condition(s), and event(s), proscribed by 18 U.S.C. § 1956; 18 U.S.C. § 1957; and/or 21 U.S.C. § 841 which may

-1-

terminate an estate or an interest in the real property . . . ."[1]  As a result, the property was subject to forfeiture.  At trial, the parties stipulated that the United States Attorney's Office affidavit was never removed from the chain of title.

On November 23, 2021, Abrams filed a complaint against Yono, alleging that Yono breached the lease agreement by "refusing and/or failing to close on the sale of the Property."  He requested specific performance and monetary damages related to the delay caused by the alleged breach of the lease agreement.  Yono denied the allegations, and cursorily raised several affirmative defenses, including estoppel, laches, and unclean hands. Following discovery, Abrams moved for summary disposition under MCR 2.116(C)(10).  The trial court denied summary disposition because questions of material fact remained as to whether Abrams' claim was barred by the doctrine of laches or whether Yono was precluded from raising laches as a defense because he had unclean hands.

The matter subsequently proceeded to trial.  The parties testified extensively regarding the reason that the United States Attorney Office's affidavit was recorded against the property. Neither party, however, could point to any language in the affidavit indicating whose actions had caused the affidavit to be filed.  Indeed, having reviewed in full the affidavit, it is clear that Yono is identified only as the owner of the property, that Abrams is not mentioned at all, and that the person or persons who allegedly committed the federal offenses identified in the first paragraph is not identified at all.  Nevertheless, both parties presented testimony suggesting that the other party was responsible for the affidavit being filed.

Additionally, regardless of whose actions caused the affidavit to be filed, it is undisputed that the affidavit was the reason that they did not close.  Abrams moved out in June 2019 following unsuccessful negotiations between the parties.  Thereafter, Abrams did not take any action to enforce his option to purchase until he filed suit in November 2021.[2]  Indeed, he admitted that he had no communications with Yono regarding the option to purchase (or any other matter) between June 2019 and November 2021.  Several months after Abrams moved from the property, Yono refinanced the property, encumbering it with two mortgages and making substantial, expensive updates to the house.

Following the presentation of proofs, the trial court found that Abrams had failed to establish the breach element of his contract claim.  Alternatively, the court found that the wrongful-conduct rule precluded Abrams from prevailing given that Abrams had admitted to illegally growing marijuana and selling it to Yono.  The court found that both Abrams and Yono had unclean hands.  Finally, the court found that it was impossible to grant Abrams' relief because he

---

[1] Generally, 18 USC 1956 prohibits money laundering, 18 USC 1957 prohibits engaging in monetary transactions for property derived from specified unlawful activity, and 21 USC 841 prohibits conduct related to the manufacture, distribution, dispensation, or possession with the intent to manufacture, distribute, or dispense controlled substances.

[2] We note that Abrams had his lawyer record a notice of an interest in the property in November 2018.  That notice, however, was filed before Abrams attempted to purchase the property in March 2019 and before he moved from the property in June 2019.

had requested specific performance, but stipulated that the United States Attorney's Office affidavit that prevented the sale in the first instance was still in place. This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Abrams argues that the trial court erred by denying his motion for summary disposition. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). In reviewing a motion for summary disposition under MCR 2.116(C)(10), a court considers "affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Greene v A P Prods, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006) (quotation marks and citation omitted). The motion for summary disposition "tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011). A genuine issue of material fact exists if the record, viewed in a light most favorable to the nonmoving party, establishes a matter in which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

### B. ANALYSIS

A party can prevail on a breach of contract claim by establishing "by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). In his motion for summary disposition, Abrams presented evidence supporting that there was a valid contract between the parties, that he was not in default at the time that he exercised his option, and that the parties did not close. He asserted that Yono breached the lease agreement by "refusing" to close or provide marketable title. He did not, however, provide any support for his assertion that Yono "refused" to close. Rather, he only submitted evidence showing that the parties were unable to close as a result of the United States Attorney's Office recording an affidavit in the property's chain of title. Further, Yono stated in an affidavit that he was never informed of the closing date. Thus, viewing the facts in the light most favorable to Yono, there is a question of fact as to whether Yono refused to close and whether the failure to close was a result of the United States Attorney's Office's affidavit.

The trial court also found that summary disposition was improper because there were questions of fact regarding the applicability of the doctrine of laches. "Laches is an equitable tool used to provide a remedy for the inconvenience resulting from [a party's] delay in asserting a legal right that was practicable to assert." *Knight v Northpointe Bank*, 300 Mich App 109, 115; 832 NW2d 439 (2013). In order for laches to apply, "inexcusable delay in bringing suit must have resulted in prejudice." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 457; 761 NW2d 846 (2008). Therefore, the passage of time alone is insufficient to trigger laches. *Knight*, 300 Mich App at 114. Because laches is an equitable doctrine, it is only available to individuals with "clean hands." *Attorney Gen v PowerPick Club*, 287 Mich App 13, 52; 783 NW2d 515 (2010). "A party with unclean hands may not assert the equitable defense of laches." *Id*.

Yono asserted that Abrams claim was barred by laches. The trial court found that there were questions of fact that precluded it from making a finding as to whether there was prejudice as a result of Abrams' delay in filing his complaint. The summary disposition record reflects that in March 2019, Abrams gave notice to Yono that he intended to exercise the option to purchase. The closing did not occur. Yono was not, in fact, ever notified of the date that the closing was scheduled with funds. Abrams moved from the property in June 2019, and did not have any communications between June 2019 and November 2021 when he filed his complaint for breach of contract. Thus, Yono did not believe that Abrams intended to purchase the property after Abrams had moved out. Viewed in the light most favorable to Yono, given the absence of communication from when Abrams moved out until he filed suit, Yono's belief was reasonable. Based upon that belief, Yono encumbered the property with two mortgages and expended money on costly improvements to the property.

Moreover, even if there were prejudice, the court also found that there was a question of fact with regard to whether Yono had unclean hands. To show that Yono's hands were unclean, Abrams presented two pieces of evidence (1) the United States Attorney's Office affidavit and (2) a pretrial diversion agreement between Yono and the federal government. Both the affidavit and the pretrial diversion agreement refer to the violation of federal statutes related to the manufacture and distribution of controlled substances. Further, both documents refer to Yono. Based upon that, it can be inferred that Yono was engaged in drug-related offenses that resulted in an affidavit being filed against the property he was leasing to Abrams.

However, that is not the only inference available based upon the two documents. The affidavit was filed in 2017, but the pretrial diversion agreement was not filed until 2021, which suggests that the two documents are unrelated. Moreover, the affidavit refers to money-laundering related offenses as well as a controlled-substance related offense, whereas the pretrial diversion agreement only references offenses related to controlled substances. Further, the pretrial diversion agreement does not state when the offenses Yono was taking responsibility for were committed. And the affidavit only reflects that Yono is the owner of the property at issue. The paragraph detailing the offenses which caused the affidavit to be filed is silent as to the identity of the person or persons who committed the offenses. For those reasons, it is reasonable to infer that the affidavit and the pretrial diversion agreement are not for the same conduct.

In sum, although it is reasonable to infer that Yono had engaged in unlawful conduct in 2021, viewing the record in the light most favorable to Yono, it is also reasonable to infer that his 2021 pretrial diversion agreement is not proof that he was engaging in unlawful conduct in 2017. Moreover, the fact that unlawful conduct occurred at a home he owned—and rented to Abrams—in 2017, does not mean that he was engaged in any illegal conduct at that time. Because there are questions of fact as to whether Yono had unclean hands, the trial court did not err by denying summary disposition.

## III. JUDGMENT OF NO CAUSE OF ACTION

### A. STANDARD OF REVIEW

Abrams next argues that the trial court erred by entering a judgment of no cause of action. "We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law

de novo." *Chelsea Investment Group, LLC v City of Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at 251.

## B. ANALYSIS

The trial court found that Abrams did not meet his burden of showing that Yono breached the lease agreement. Abrams does not directly challenge that finding on appeal. Nevertheless, we conclude that the court's finding was not clearly erroneous.

The trial court judgment reflects that there was a valid contract between the parties and that Abrams was not in default when he exercised the option to purchase in March 2019. The closing did not occur because of the affidavit recorded by the United States Attorney's Office. To show breach, Abrams presented evidence suggesting that Yono's conduct was the reason that the affidavit was filed. In contrast, Yono presented testimony suggesting that it was Abrams' conduct that led to the affidavit being filed. Either scenario, however, is equally likely based upon the record.

The house was raided in 2017. Abrams was the sole individual living at the property. He was growing and selling marijuana from the home. The marijuana was confiscated and he was charged with a federal offense. He entered into a pretrial diversion, which he completed successfully. Abrams admitted that the raid was because of his "collaboration" with the Yono family. That collaboration included getting marijuana "cuts" from Yono to grow marijuana, selling marijuana to Yono, and unspecified work for other members of Yono's family. This testimony suggests that it was Abrams' conduct that led to the affidavit being recorded in 2017.

On the other hand, although Abrams had possession of the house, Yono owned it. Indeed, he owned three properties in 2017. All three were raided. Yono admitted that he was selling marijuana between 2014 and 2017. Some of that marijuana was purchased from Abrams. As a result of the raids, Yono and several of his family members were charged with drug-related federal offenses, including conspiracy. Yono's testimony allows for an inference that the 2021 pretrial diversion agreement was a result of his actions in 2017. This provides the link between the 2017 affidavit and the 2021 pretrial diversion agreement that was missing at the summary disposition stage of the proceedings. Based upon this evidence, it can be inferred that the affidavit was filed as a result of Yono's conduct.

Additionally, a third inference exists based upon the testimony: both parties actions' caused the affidavit to be filed. The trial court found that this was the case, and that finding was not clearly erroneous. Both Yono and Abrams had a connection with the property in 2017. Abrams lived there and was growing and selling marijuana. Yono owned the property and was providing "cuts" to Abrams and purchasing the marijuana he was growing. Further, it can be inferred that Abrams and Yono were part of the same criminal enterprise. Abrams had dealings with Yono and other members of Yono's family and other members of the Yono clan were raided and charged with crimes in relation to the sale of marijuana. Yono testified that they were all part of the same group.

Given the above evidence, therefore, the trial court's finding that the record was insufficient to show that Yono's conduct caused the affidavit to be filed is not clearly erroneous. Each scenario was factually supported and was equally likely. Abrams, therefore, did not meet his burden of establishing that Yono breached the contract.

On appeal, Abrams argues that the trial court improperly shifted the burden of proving that Yono was the cause of the affidavit from being filed from Yono to him. We disagree. Whether Yono engaged in wrongful conduct leading to the affidavit being filed was relevant to Yono's affirmative defense of laches. Yono, therefore, had the burden of proving that his hands were clean. Yet, Abrams still had the burden of proving that Yono breached the contract. He alleged that the breach was caused by Yono's conduct in causing the affidavit to be filed. Thus, he had the burden of proving that fact.

Finally, Abrams complains that the trial court improperly used the wrongful conduct rule to bar his claim. He maintains that the wrongful-conduct rule is an affirmative defense and that, by not raising it, Yono waived it. Yet, the trial court sua sponte raised the wrongful conduct rule as a result of the proofs admitted at trial.[3] Abrams has pointed to no authority precluding a court sitting in equity from sua sponte considering equitable principles before rendering judgment. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Consequently, because Abrams has not directed this Court to any authority indicating that a court may not raise an issue sua sponte when sitting in equity, we consider this issue abandoned on appeal and decline to consider it.

Affirmed. Yono may tax costs as the prevailing party. MCR 7.219(A).

/s/ Kathleen A. Feeney
/s/ Michael J. Kelly
/s/ Michelle M. Rick

---

[3] On appeal, Yono argues that by raising unclean hands as a defense, he also raised the wrongful-conduct rule as a defense. Even if that were the case, his affirmative defense stated "unclean hands" but, in contravention of MCR 2.111(F), he did not state the "the facts constituting" that affirmative defense. Thus, the defense was not adequately raised.